# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| V. | : | CRIMINAL NO.  20-211 |
| ANTHONY LUCIDONIO, SR. NICHOLAS LUCIDONIO | : | |
| | : | |

## GOVERNMENT'S RESENTENCING MEMORANDUM CONCERNING NICHOLAS LUCIDONIO

The United States of America, by and through the undersigned attorneys, submits this memorandum in aid of resentencing upon the Circuit Court's vacating Defendant Nicholas Lucidonio's sentence and ordering a limited remand "for resentencing without the application of United States Sentencing Guideline 2T1.9(b)(2)."

## INTRODUCTION

The Court previously sentenced this defendant to 20 months imprisonment, after calculating a Sentencing Guideline Total Offense Level of 17, pursuant to U.S.S.G. § 2T1.9 (Conspiracy to Defraud) which resulted in a recommended sentencing range of between 24 and 30 months.  In calculating the Guidelines, the Court, pursuant to U.S.S.G. § 2T1.9(b)(2), applied a 2-point upward adjustment based upon the defendant's having "encouraged others," namely his employees, to break the law when he paid them cash "under the table."  Defendant appealed that enhancement pursuant to a narrow carve-out to the plea agreement's appeal waiver.  The Third Circuit agreed with the government and this Court that the enhancement "squarely" applies to the sort of conduct at issue here, and that circumstantial evidence was sufficient to establish that the

defendant indeed encouraged others to break the law, *see* Op. at 10-11, but held that the Government had failed to factually prove the employees were *not* defendant's co-conspirators, a prerequisite in order for the enhancement to apply.  Accordingly, the Third Circuit vacated the prior sentence and "REMANDED for resentencing without the application of United States Sentencing Guideline 2T1.9(b)(2)."

The Third Circuit's remanding for resentencing without any enhancement under Section 2T1.9(b)(2) constitutes a limited remand mandating that the scope of the resentencing is limited to removing the enhancement, recalculating the Guidelines range, and resentencing with the new Guideline range considered.  With the 2-point adjustment removed, the Sentencing Guideline Total Offense Level is 15, which results in a recommended sentencing range of between 18 and 24 months, a range that still contains the 20-month term of imprisonment the Court previously imposed.  For the reasons stated below, the Court should resentence the defendant to 20 months of imprisonment and reimpose the order of restitution.

## DISCUSSION

### I.    SENTENCING STANDARDS

#### A.  Scope of Remand

It is a well-established principle of law that a district court must follow an appellate court's mandate.  *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306 (1948) (citing *Ex parte Sibbald v. United States*, 12 Pet. 488, 9 L.Ed. 1167 (1838)).  In so doing, "[a] trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Bankers Trust Co. v. Bethlehem Steel Corp*., 761 F.2d 943, 949 (3d Cir. 1985).  Following a remand for a resentencing, a district court's failure to abide by the scope

and substance of this Court's mandate constitutes reversible error. *United States v. Kennedy*, 682 F.3d 244, 253–54 (3d Cir. 2012).

The Third Circuit's Mandate and Judgement in this case directed that the prior sentencing be vacated and that "[t]his case is REMANDED for resentencing without the application of United States Sentencing Guideline § 2T1.9(b)(2)." Dkt No. 143. The most natural reading of this sentence is that the scope of resentencing on remand is limited to removing the enhancement, recalculating the Guidelines range without the enhancement, and reimposing sentence after taking into account the sentencing factors pursuant to Section 3553(a).

### B.  The Updated PSR

In response to the Court's letter to counsel dated June 17, 2025 reminding counsel that any new factual and other updated information can be provided to the Court in supplemental briefing, counsel stated that "[i]n hindsight, we should have sought guidance from the Court to confirm that the May 28 Order was intended to override Rule 32 procedures." Def. Ltr. (6/20/25). But the Court's May 28th Order did not override Rule 32 procedures because no new PSR was required at all. As the Court recognized in its May 28th Order, sentencing a defendant on remand after an earlier sentence has been vacated does not require that the Probation Office prepare wholesale an entirely new PSR. Instead, as it did here, the Court has discretion to have the earlier PSR updated to conform with the Mandate and Opinion of the Third Circuit, and have the parties provide the Court in their updated sentencing memoranda with any new material and information since the last sentencing that is relevant to sentencing on remand.

Indeed, there is nothing in either Rule 32 or in 18 U.S.C. § 3552 specifically governing what should happen with regard to the PSR when a case is remanded for resentencing, let alone

anything requiring an entirely new PSR every time a case is remanded. *United States v. Fernandez*, 916 F.2d 125 (3d Cir. 1990), though not directly on point, addressed the issue in the related context of a ruling on a Rule 35 motion to correct an illegal sentence and declined to adopt a rule invariably requiring a new PSR. There, the court held that, assuming that Rule 32 applies to a Rule 35 motion, "the district court did not abuse its discretion in not obtaining a new presentence report" because the existing presentence report sufficed because the Rule 35 resentencing was "on the basis of the circumstances as they existed at the time of the original sentencing." *Id.* at 129.

Similarly, the out-of-circuit caselaw addressing the issue supports the proposition that an entirely new PSR is not necessarily required on remand for resentencing, but instead the district court has the discretion to tailor the procedure to the particular case. For instance, in *United States v. Conhaim*, the Second Circuit rejected a rule invariably requiring new, or even updated, PSRs, explaining that Rule 32 does not require this and imposing such a requirement would needlessly overburden the Probation Office:

> We disagree. Rule 32(b) and § 3664 do not mandate that the district court in all circumstances require an updated PSR in the event of resentencing, and we are not aware of any court that has read them to impose such a requirement. It would strain the language of these provisions to impose a mechanical requirement that a PSR be "updated" in the event of resentencing, without regard to the particular circumstances presented and without regard to the sort of record actually before the judge at a resentencing hearing. In our view, absent explicit direction by Congress or the rulemakers, any such blanket requirement-especially under the sentencing system created pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq. and 28 U.S.C. §§ 991-98, in which resentencings are common-would be unreasonable, serve no identifiable interest of justice, and disserve the interests of judicial economy by requiring unnecessary work by the Probation Office. Accordingly, we hold that in the circumstances presented here-where a hearing on resentencing was held at which the parties had a full opportunity to be heard and to supplement the PSR as needed-a reading of Rule

> 32(b) and § 3664 to require a new or "updated" PSR upon resentencing would be strained and unjustified.

160 F.3d 893, 896 (2d Cir. 1998); *see also, e.g., United States v. Hardesty*, 958 F.2d 910, 915-16 (9th Cir. 1992) (citing *Fernandez*); *United States v. Howard*, 645 F. App'x 459, 463 (6th Cir. 2016) ("there is no requirement that a new PSR be prepared or filed for resentencing"). Moreover, the Court did direct USPO to update the PSR, albeit in a limited fashion, so the Court has not erred even if there were a requirement for a new PSR.

## II.    THE SENTENCING GUIDELINE CALCULATION

As set forth in the memorandum by the U.S. Probation Officer dated May 30, 2025, updating the previous final PSR from the earlier sentencing, and consistent with the Third Circuit's Mandate that the case is "remanded for resentencing without the application of United States Sentencing Guideline Section 2T1.9(b)(2)," the Total Offense Level, under U.S.S.G. § 2T1.9 (conspiracy to defraud), is now 15 with the elimination of the U.S.S.G. § 2T1.9(a)(2) enhancement for encouraging others, resulting in a recommended sentencing range of 18 to 24 months. The Total Offense Level results from the substantial $1,321,043 loss the defendant caused over the decade or more that he committed the offense, with appropriate deductions for acceptance of responsibility and his lack of a prior criminal record.

In response to the Probation Officer's memorandum updating the PSR, defendant now claims that U.S.S.G. § 2T1.9 (Conspiracy to Defraud) does not apply at all because it is invalid because it did not go through the required notice and comment procedures of 5 U.S.C. § 553 back when it was promulgated in 1987. *See* Def.'s Ltr. (6/16/25) at 2. In the absence of Section 2T1.9 he claims, his sentence cannot be tethered to tax loss, and the governing Guideline provision is

U.S.S.G. § 2X5.1, which directs in part that the Court apply Section 3553(a) factors in the absence of any other governing Guideline provision.  *See id.*

First, defendant, in pursuing this argument now, would have this Court violate the Third Circuit's Mandate, which limits the remand to recalculation of the Guidelines without Section 2T1.9(b)(2).  Second, by raising this argument now as he did in the Third Circuit, defendant arguably breaches his plea agreement in which he agreed Section 2T1.9 applies to sentencing in this matter.  Dkt No. 71 ¶ 11(a) (Plea Agreement) ("[t]he parties agree[d] that the defendant's Guideline range should be calculated pursuant to USSG §§ 2T1.9(a)(1) [and] 2T4.1.").   He also arguably breached his plea agreement by raising this argument on appeal because the carve-out to the appeal waiver was limited to contesting application of 2T1.9(b)(2), encouraging others. *Id.* ¶ 13(b)(v).  Should the defendant appeal after this resentencing, the government will seek dismissal based on the plea agreement limiting any appeal to contesting application of the 2T1.9(b)(2) adjustment and the fact that that enhancement was not imposed on resentencing.

In any event, defendant is wrong on the merits.  Though the Third Circuit did not address his argument, we cited to the Court of Appeals *American Iron and Steel Institute v. EPA*, 568 F.2d 284 (3d Cir. 1977), which held that "the submission of a proposed rule for comment does not of necessity bind an agency to undertake a new round of notice and comment before it adopts a rule which is different[,] even substantially different[,] from the proposed rule." *Id.* at 293. Instead, we contended, all that is required is that the notice "fairly apprise interested persons of the 'subjects and issues' before the Agency." *Ibid.* While Section 2T1.9 first appeared in the final Guidelines submitted for congressional review, the two versions of the proposed Guidelines the Commission published for notice and comment unquestionably apprised the public of the "subjects and issues"

reflected in USSG §2T1.9. *See* 51 Fed. Reg. 35080 (Preliminary Guidelines); 52 Fed. Reg. 3920 (Proposed Guidelines). Both the Preliminary and Proposed Guidelines gave notice that the Commission was proposing to promulgate comprehensive federal sentencing guidelines, including specific guidelines for criminal tax offenses — the specific subject of §2T1.9. *See* 51 Fed. Reg. at 35095-97; 52 Fed. Reg. at 3965-67. Moreover, the Preliminary and Proposed Guidelines both included provisions that — like the §2T1.9(b)(2) specific offense characteristic at issue here — addressed the issue of sentencing enhancements for defendants who encourage others to violate the tax laws. *See* 51 Fed. Reg. at 35095 (proposing a guideline for "Aiding, Assisting, Procuring, Counseling, or Advising Tax Fraud," which included an offense level increase that applied "if the conduct was in furtherance of an organized movement to encourage others to violate the internal revenue laws"); 52 Fed. Reg. at 3965 (same).

Finally, even if Section 2T1.9 did not apply, defendant Nicholas Lucidonio's Guideline range would be identical to the calculation under § 2T1.9 because the next most analogous Guideline would be U.S.S.G. § 2T1.1 ("Tax Evasion" . . . "Fraudulent or False Returns"), which results in the same calculation.  Defendant cites 2X5.1 ("Other Felony Offenses") as the catch-all, but fails to mention that it directs the Court to "apply the most analogous offense guideline" before resorting solely to Section 3553(a).  There are several analogous Guideline provisions, beginning with § 2T1.1, which starts with the same calculation of tax loss based on the same tax loss table in § 2T4.1 incorporated as part of § 2T1.9.  *See* U.S.S.G 2T1.1(a)(1).  Defendant was charged with evasion and filing false returns, which is relevant conduct *vis a vis* the conspiracy count of conviction.   For these reasons, defendant's arguments on this point are entirely without merit and should be rejected.

The Sentencing Guideline Offense level is 15, resulting in a recommended Guideline range of 18 to 24 months.

## III.    SECTION 3553(a) FACTORS

The Lucidonios' tax evasion scheme and conspiracy, extending over at least a decade, was egregious and resulted in substantial tax harm to the United States.  They hid at least $8 million in receipts and caused at least $1.3 million loss to the federal Treasury.  These defendants roped many employees into their scheme by paying them substantial cash under the table, thereby encouraging those employees to commit tax fraud and violate their obligations as citizens.

In considering the seriousness of the offense, the Government reiterates several points. First, tax and other related white-collar offenses are very serious crimes, notwithstanding many white-collar defendants' plea for non-prison sentences due to their non-violent nature.   Financial fraud causes serious financial harm to victims.   Here, again, at its core, the defendant stole money from the pockets of every hard-working tax paying citizen of this country.  Because of tax cheats like this defendant, the tax gap grows, jeopardizing the orderly operation of government and, to borrow words from our Founders, jeopardizes our "common defense" and "general welfare."

Second, the defendant's financial assault on the federal Treasury was not an isolated occurrence, a momentary lapse in judgement.  It occurred over at least a decade.  His crimes obviously went on for a very long time, and but for a family squabble that caused his relatives to turn government informants, it is likely he would still be stealing from the Treasury.

Third, the defendant encouraged many of his employees, upwards of 25-30 of them, to break the law too, as the Third Circuit acknowledged.   By paying them in cash under the table, the defendant knew these employees would not report their cash wages as income to the IRS.

8

Indeed, as this Court recognized, that was an essential part of the defendants' plan because, had these employees reported their cash income from Tony Luke's on their tax returns, the mismatch with what they reported and the Forms W-2 issued by the defendants would have exposed the fraud. Dkt. 104 at 13. In initially imposing the § 2T1.9(b)(2) adjustment, which was predicated on the employees not being co-conspirators in defendant's scheme, the Court did not impose a leadership enhancement pursuant to U.S.S.G. § 3B1.1. If the government had, instead, settled this case based on the employees being co-conspirators, the Court could have imposed a two-point leadership enhancement, resulting in the same total offense level. The government is not seeking a leadership enhancement, but it remains the fact that, in evaluating the nature and circumstances of the offense under Section 3553(a), defendant's culpability does not change whether or not the employees were technically co-conspirators in defendant's scheme.

Fourth, the defendant, like his father, refused to heed the warning sign when their former employees took a limited set of books and threatened to go to state and federal authorities to report their violation of the tax laws. Instead of ceasing their fraudulent activity and getting right with the law, they submitted only a limited set of amended returns, based on what they thought might be disclosed, but continued their fraud scheme, particularly their payroll tax evasion, by, in part, falsifying the very amended returns they filed purporting to correct their earlier fraud. Not until the search warrant in March 2017 did they cease their payroll scheme – but even then, there is some evidence Nicholas continued to pay at least one employee under the table. *See* Dkt. 91 at A0939-947.

Finally, while the Government certainly understands that the Court, for Guideline purposes, credits the defendants with 3 points for acceptance of responsibility as the parties agreed

to in the plea agreements, it bears mentioning that even after they pled guilty by allocuting to the payroll tax conspiracy, they spent months denying the vast bulk of the harm they caused both with respect to the payroll tax part of the scheme as well as the income tax part of the scheme. Despite knowing full well that they pocketed at least $1.3 million in evaded tax and caused a corresponding loss to the Treasury, the defendant claimed he and his father owed the victim a small fraction of that amount.

Defendant, in its letter to USPO dated June 16, 2025, identified new information that the Court should consider in resentencing the defendant. First, defendant submits relevant tax returns filed since his initial sentencing claiming that he is in compliance, implicitly suggesting there is no need to promote specific deterrence and/or that he has been rehabilitated. *See* Defs Ltr. (6/16/25) at 2. But compliance is required and the norm for every citizen, especially without needed supervision from USPO and the Court which this defendant has had over the last year. Even assuming current compliance, such compliance does not mitigate his decade worth offenses already committed for which he still must be sentenced.[1]

Defendant also submits updated medical information, including new medical conditions for himself – as well as for his father, now released from prison, for whom he essentially claims he is a needed caregiver. But nothing in his updated medical history alters the Bureau of Prison's ("BOP") earlier conclusion that it is well equipped to handle his medical conditions. And as for

---

[1] Defendant, in a footnote, strays from the Third Circuit's Mandate by questioning the Court's tax loss finding. *See* Defs Ltr (6/16/25) at 3 n.4. He essentially claims his latest filings show gross and net profit percentages consistent with his calculations of loss during the years of the scheme. But similar arguments were raised, countered, and rejected by the Court during the extensive litigation on loss. The Government adds that, assuming his latest returns are accurate, any reduced profit in recent years may also be due to the fact that the defendant no longer operates under the well-known brand Tony Luke's, but under a new name, albeit at the same location.

care of his father, the defendant has had almost 18 months, as part of his staggered sentence, to make arrangements to ensure the care of his father. He claims he assists his father with nearly all activities of daily living, including meal preparation, bathing, and medical appointments, but fails to explain who has been managing Tony and Nick's Restaurant every day for which he claimed a staggered sentence was necessary during earlier proceedings so that the business could keep running while keeping its employees employed. Defendant's wife has been helping defendant's elderly parents, and it is hard to believe, given his means, family support, and the extensive community support shown during earlier proceedings, that the defendant cannot make arrangements to ensure the proper care of his father in his absence.

Accordingly, for these reasons, and the reasons set forth in our initial sentencing memoranda which we incorporate by reference herein, and taking into account all of the sentencing factors pursuant to Section 3553(a), including but not limited to the need to promote general deterrence, particularly in criminal tax cases, and the need to promote respect for the law, the Government respectfully requests that the Court reimpose a 20 month term of imprisonment as the sentence for this defendant.

## IV.    <u>RESTITUTION</u>

The Court entered an Order of restitution against both defendants, joint and several.  *See* Dkt. 116.  That Order was vacated as to defendant Nicholas Lucidonio.  We respectfully request that the Court order restitution in the identical amounts for the same periods that it previously imposed on defendant Nicholas Lucidonio.

## <u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully urges the Court to impose a sentence for Nicholas Lucidonio of 20 months, and to impose an order of restitution.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/John N. Kane, Jr.*
JOHN N. KANE, JR.
Chief, Northern Criminal Enforcement
U.S. Department of Justice, Tax Division
PATRICK MURRAY
Assistant U.S. Attorney

Dated: July 9, 2025

12

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that a true and correct copy of the GOVERNMENT'S RESENTENCING MEMORANDUM CONCERNING NICHOLAS LUCIDONIO was served upon the following *via* ECF:

Ian Comisky, Esq.
Matthew Lee, Esq.
Walter Weir, Esq.

*/s/John N. Kane, Jr.*
JOHN N. KANE, JR.
Chief
U.S. Department of Justice, Tax Division
Northern Criminal Enforcement Section
150 M Street, N.E.
Washington, DC 20002
(202) 353-9716

Dated: July 9, 2025